No. 86-399

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN THE MATTER OF
J.W. AND J.C.,
Youths in Need of Care.

---

APPEAL FROM:   The District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Patricia J. Schaeffer, Asst. Atty. General, Helena
        Mike McGrath, County Attorney, Helena, Montana
        Carolyn Clemens, Deputy County Attorney, Helena
        Nicholas Jacques, (Children), Helena, Montana

---

                    Submitted on Briefs: Jan. 29, 1987

                            Decided: May 11, 1987

Filed:   MAY 11 1987


                    _____
                              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

The natural mother of J.W. and J.C. appeals orders of the First Judicial District Court, County of Lewis and Clark, finding J.W. and J.C. to be youths in need of care and granting temporary custody to the Lewis and Clark County Office of Human Services. We affirm.

The natural mother, B.W. (hereinafter "mother") has two children, J.C. and J.W. J.C., currently twelve, was born of a prior marriage of the mother. J.W. was delivered at home on December 18, 1984. Lewis and Clark County Office of Human Services (LCCOHS) received a referral concerning the birth. The mother stated she was unaware of her pregnancy.

On February 4, 1985, LCCOHS received a report that J.C. had extensive unexcused absences from school. On May 1, 1985, the mother was hospitalized for psychiatric care. The deputy county attorney filed a petition on behalf of LCCOHS requesting temporary investigative authority and protective services. The petition was granted by the District Court May 10, 1985. J.C. and J.W. were placed in foster care, with J.C. subsequently being allowed to spend the summer with his natural father in Arizona.

Both children were returned to the mother and LCCOHS terminated its involvement with the family in September, 1985, as it appeared the mother had successfully completed psychiatric treatment.

Following further reports concerning the children's welfare, a supplemental petition for temporary investigative authority and protective services was filed November 15, 1985, on behalf of LCCOHS. A report attached to the petition listed the following LCCOHS referrals concerning the children:

2

10-10-85: Educational neglect - extensive absences from school. Referrant noted that [J.C.] has attended many different schools in Helena and has a history of lengthy unexcused absences.

10-25-85: Concerns about [the mother's] emotional condition and ability to care for her children, [J.C.'s] nonattendance at school, and fires in the family apartment on two consecutive days. Referrant said [the mother] attributed the fires to someone who she said had broken into her apartment, but [the mother] had been home both days.

10-28-85: Continued educational neglect of [J.C.]. Neighbors have seen him outside playing.

10-29-85: Concern expressed about [the mother's] emotional state and about [J.C.'s] not being in school since October 2.

11-01-85: Continued educational neglect of [J.C.].

Social worker Paul Heath made several attempts to visit the family but no one came to the door until 11-07-85. He was admitted briefly by [the mother] and saw both children, who seemed to be okay. [The mother] spoke very slowly and the house was stuffy and dark. [The mother] insisted that the social worker leave right away. Later on 11-07-85 social worker Laura Taffs attempted to visit to explore the recent concerns. [The mother] opened the door for about two minutes, would not allow the social worker in, and said she and her children were sick and were staying home. She then shut the door and would not respond to further knocking.

The District Court entered its order November 15, 1985, granting LCCOHS temporary investigative authority and the right to place the children in foster care if deemed necessary for their protection. Pursuant to the order, LCCOHS investigated the matter and placed the children in foster care. A show cause hearing concerning the order was

held December 3, 1985. Following hearing, the District Court entered its order dated December 6, 1985, placing temporary custody with the Department of Social and Rehabilitation Services (SRS) and declaring the children to be youths in need of care. The order further required LCCOHS to develop a treatment plan and recommended J.W. be placed in foster care and J.C. be placed with his father if a favorable home study was received from Arizona officials.

Pursuant to the mother's request for a hearing the District Court held a hearing on March 20, 1986. At the hearing, counsel for the mother questioned whether the District Court orders of November 15, 1985, and December 6, 1985, were a proper exercise of the court's jurisdiction. The district judge set a briefing schedule concerning the issue and set hearing for May 15, 1986.

At the hearing on March 20, 1986, testimony was heard from the psychologist and social workers involved with the case, the mother, and the foster mother of J.W. Dr. Leonard, a psychologist who examined the mother, testified that the mother had a borderline personality and most likely was schizophrenic when under stress. Dr. Leonard found the mother denied her problems and tended to reject counseling. Dr. Leonard concluded that without treatment the mother would be incapable at times of caring for her children.

The social workers testified that the visits between the mother and J.C. and J.W. conducted at LCCOHS had not gone well. The mother argued excessively with J.C. and was generally inattentive to J.W.'s needs. Two of the social workers testified that the mother had refused to sign the treatment plan. The mother indicated that she would not take medication if prescribed for her, did not believe she needed counseling, and on one occasion refused to speak with a psychologist who was brought to her home.

The District Court entered its order May 28, 1986, denying the mother's motion to vacate the November 15, 1985, and December 6, 1985, orders of the court. However, the District Court did strike the portion of the December 6, 1985, order finding the children to be youths in need of care. Prior to the May 28, 1986, District Court order the county attorney filed a petition on April 29, 1986, requesting that the children be declared youths in need of care. A hearing relating to the petition was held May 30, 1986.

At the hearing on May 30, 1986, testimony was heard from the children's pediatrician and the social worker working on the mother's case at that time. The pediatrician testified that J.W. has asthma and respiratory problems which are aggravated by cigarette smoke. Additionally, he stated there were no medical reasons for J.C.'s extensive absences from school. The social worker testified that the mother continued to smoke in J.W.'s presence even though aware smoking aggravated J.W.'s asthma. The social worker further testified that the mother continued to deny that she needed therapy and refused to be involved with the family focus program which would have assisted the mother in caring for her children.

On June 20, 1986, the District Court entered its order declaring the children to be youths in need of care, and granting continued temporary custody with SRS until a dispositional hearing could be held. A dispositional hearing was held July 28, 1986, and subsequently the District Court entered its order relating to disposition August 22, 1986. The court granted continued temporary custody with SRS and recommended that J.C. remain with his natural father in Arizona and J.W. remain in foster care. The court approved the proposed treatment plan, and ordered LCCOHS to inform the

court of its recommendation as to placement of the children upon the mother's completion of the treatment plan.

The mother appeals and raises the following issues:

1) Whether the District Court erred in denying the motions to vacate?

2) Whether the District Court erred in declaring the children to be youths in need of care and in its subsequent dispositional order?

The mother contends the November 15, 1985, District Court order should have been vacated for the following reasons: 1) the petition for temporary investigative authority was not supported by probable cause that the children were in danger of being abused or neglected; 2) the petition did not request immediate removal of the children from the home; and 3) section 41-3-403, MCA, does not authorize immediate removal of the children from the home without a prior hearing. We find no merit to these contentions.

The supplemental petition dated November 15, 1985, was filed pursuant to §§ 41-3-402 and -3, MCA. The county attorney chose to file the petition under those statutes because LCCOHS could not actually determine whether the children were in danger of being abused or neglected. Such determination could not be made because the mother would not permit anyone to enter her home to investigate. Pursuant to § 41-3-402, MCA, the county attorney may file a petition for investigative authority and protective services "in cases where it appears that a youth is abused or neglected or is in danger of being abused or neglected."

The LCCOHS report accompanying the petition established probable cause to investigate the possibility of abuse or neglect of the children. The report included: 1) numerous referrals concerning J.C.'s absence from school for no

6

apparent reason; 2) concerns from neighbors about the mother's emotional condition and ability to care for her children; 3) reports of fires in the family apartment on two consecutive days; 4) the mother's recent hospitalization for psychiatric care and placement of the children in foster care at that time; and 5) social workers' reports that the mother would not answer the door to speak with them.

Section 41-3-102, MCA, provides in part:

. . .

(2) An "abused or neglected child" means a child whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of his parent or other person responsible for his welfare.

(3) "Harm to a child's health or welfare" means the harm that occurs whenever the parent or other person responsible for the child's welfare:

. . .

(c) causes failure to thrive or otherwise fails to supply the child with adequate food or fails to supply clothing, shelter, education, or health care, though financially able to do so or offered financial or other reasonable means to do so;

. . .

We find substantial evidence in the LCCOHS report supporting probable cause that the physical and mental health of J.W. and J.C. was in danger. The mother's previous history of psychiatric problems, the fires in the family home, J.C.'s extensive absences from school, and the inability of social workers to investigate these matters are sufficient facts to warrant the granting of temporary investigative authority.

7

The November 15, 1985, District Court order granted LCCOHS the right to place the youths in foster care if deemed necessary for their protection. The mother contends the District Court improperly delegated its authority to remove the children from the home to LCCOHS. We disagree with this contention and find the court order to be within the scope of § 41-3-403, MCA. Pursuant to this section, the court may grant "such relief as may be required for the immediate protection of the youth."

LCCOHS was in a difficult position in this case because the mother would not cooperate with its investigative efforts. We find that portion of the court order granting LCCOHS the right to place the youths in foster care if deemed necessary for their protection was proper under the circumstances.

The mother contends she was entitled to a show cause hearing before the removal of her children. The District Court order stated that the mother shall immediately comply with the order or appear before the court to show cause why she should not be required to comply. The order was in compliance with § 41-3-403, MCA. There is no requirement in § 41-3-403, MCA, that a show cause hearing be held prior to removal of youths pursuant to this section. We find the November 15, 1985, District Court order to be lawful and a proper exercise of the court's discretion.

The mother next contends that the December 6, 1985, District Court order should be vacated for failure to comply with § 41-3-404, MCA, and § 41-3-406, MCA. Further, the mother contends that the placement of J.C. with his father in Arizona was not in compliance with § 41-3-406(3)(c), MCA.

The mother argues that the filing of a petition for investigative authority under § 41-3-402, MCA, must also include a petition drawn pursuant to § 41-3-401, MCA. The

8

mother points out that the 1985 amendment to § 41-3-401, MCA, eliminated § 41-3-401(13), MCA, which provided: "This section does not apply to a petition for temporary investigative authority and protective services." The mother claims the legislature clearly intended to consolidate petitions to have youths declared in need of care and petitions for temporary investigative authority. We find no legislative history to support this contention, nor is there any language in either section providing a petition filed pursuant to § 41-3-402, MCA, must be accompanied with a petition filed under § 41-3-401, MCA.

The mother seeks to have the December 6, 1985, order vacated for lack of an adjudicatory hearing pursuant to § 41-3-404, MCA, and a dispositional hearing pursuant to § 41-3-406, MCA. In denying the motion to vacate, the District Court found the proceedings to be under §§ 41-3-402 and -3, MCA, and a show cause hearing was properly held within 20 days as required by § 41-3-403, MCA.

We agree with the District Court that a show cause hearing is the only hearing required when a petition for temporary investigative authority is filed under § 41-3-402, MCA. The District Court did strike its finding that the youths were in need of care from the December 6, 1985, order as being in excess of its jurisdiction. We find no error by the District Court.

In its December 6, 1985, order the District Court granted temporary custody of J.C. and J.W. to SRS with a recommendation that J.C. be placed with his father in Arizona following receipt of a favorable home study from Arizona officials. The mother contends this portion of the order is in violation of § 41-3-406(3)(c), MCA. We disagree. Section 41-3-406, MCA, relates to transfer of legal custody following the adjudicatory and dispositional hearings. The District

9

Court granted _temporary_ custody to SRS with a recommendation that J.C. be _temporarily_ placed with his father in Arizona. We find this to be within the court's authority under § 41-3-403, MCA, which permits temporary disposition in the best interest of the youth.

The next issue is whether the District Court erred in declaring J.W. and J.C. youths in need of care in its June 20, 1986, order. We find substantial credible evidence in the record supporting the District Court determination.

Prior to the proceedings at issue herein, the mother experienced a psychotic break in May, 1985, and was hospitalized for psychiatric care. The children were placed in temporary foster care at that time. Contrary to the mother's assertions this evidence is relevant and was properly admitted. Events from the recent past relating to the mother's mental condition are clearly relevant in determining whether she is capable of properly caring for her children. The medical testimony reveals that the mother is presently in need of counseling and likely should be receiving medication. The record also indicates the mother has refused to accept medical treatment for the most part.

The older youth, J.C., told social workers that he looks after J.W. during periods when his mother is acting irrationally. J.C. worries about J.W.'s safety when left alone with the mother. The mother leaves cigarettes burning and forgets to turn off the stove. J.W. has a problem with respiratory illness which is aggravated by cigarette smoke. The mother is aware of this, but continues to smoke in the presence of J.W. J.W. will likely need frequent medical attention if exposed to smoke on a regular basis.

The mother claims J.C. has poor school attendance due to sickness. J.C.'s pediatrician disputed this claim stating that J.C. was a normal, healthy child. J.C. missed 73½ days

10

during a school year while at Kessler School. In the fall of 1985, J.C. missed 33 consecutive school days while a student at Bryant School. J.C. informed his counselor that he was bored staying at home and rarely felt sick. Neighbors frequently saw him playing in the yard.

The mother asserts that poor school attendance is not educational neglect as defined in § 41-3-102, MCA, and is a matter for school authorities, not LCCOHS. We find J.C.'s poor school attendance to be a proper focus of inquiry in the LCCOHS investigation. The record is clear the mother is responsible for educational neglect of J.C.

An abused or neglected child is a child whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of his parent. Section 41-3-102(2), MCA. In this case, it is clear J.W.'s welfare is in danger due to the mother's emotional and mental condition and J.C. has missed extensive schooling due to his mother. The medical evidence is that the mother's ability to care for J.W. and J.C. is questionable but that with therapy and medication the mother's problems are treatable. The treatment plan approved by the District Court provides for counseling and interaction between the mother and her children with the ultimate goal of returning custody of the children to their mother. We find no abuse of discretion or errors of law by the District Court.

The District Court is affirmed.

Chief Justice

We Concur:

11

William E. Hunter
Justices

12